[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10947

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ZACHARY BIRD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cr-00288-MSS-TGW-1

_____

Before WILSON, NEWSOM, and LAGOA, Circuit Judges.

WILSON, Circuit Judge:

Congress enacted the Currency and Foreign Transactions Reporting Act of 1970 (commonly referred to as the Bank Secrecy Act) to prevent individuals engaged in criminal conduct from utilizing financial institutions as intermediaries. *See* 31 U.S.C. § 5311; *Ratzlaf v. United States*, 510 U.S. 135, 138–39 (1994). To achieve this goal, the Bank Secrecy Act imposes a number of reporting requirements for particular financial transactions. *See, e.g.*, 31 U.S.C. § 5313. Relevant here, domestic financial institutions are required to file currency transaction reports (CTRs) for any deposit, withdrawal, exchange, or transaction of more than $10,000 in currency on a single business day. 31 C.F.R. § 1010.311 (2011). To deter individuals from circumventing this requirement, Congress enacted 31 U.S.C. § 5324(a)(3), which criminalizes structuring transactions for the purpose of evading reporting requirements. *Ratzlaf*, 510 U.S. at 138–39; *see also* 31 U.S.C. § 5324(d). So, an individual who breaks a deposit in excess of $10,000 into smaller increments in order to avoid reporting requirements is generally guilty of "structuring." *United States v. Aunspaugh*, 792 F.3d 1302, 1311 (11th Cir. 2015).

A jury convicted Zachary Bird of illegally structuring two separate land-sale contract payments of around $270,000 each. On appeal, Bird argues that there was insufficient evidence to support his convictions. Reviewing the record to determine how a jury might reasonably conclude that he structured deposits to avoid the

$10,000 reporting requirement, we see that Bird made 22 cash deposits below $10,000 over seven days to satisfy the first payment. Then, Bird made 38 cash deposits under $10,000 (some of which were made on consecutive days) over the course of around seven and a half months to satisfy the second payment. While we dive into greater detail below, suffice it for now to say there is sufficient evidence to support Bird's convictions.

Still, Bird argues that we should vacate his conviction due to a plainly erroneous jury instruction. So, we head back to the record where we discover that Bird jointly proposed the instruction that he now contests. Because Bird invited the error that he now challenges, we decline to review this issue.

Accordingly, we affirm Bird's convictions.

## I. Background

The origins of this case come from Bird's work as the primary physician at a pain management clinic in Hillsborough County, Florida. In its second superseding indictment, the government charged Bird for unlawfully distributing, and maintaining his clinic for the purpose of distributing, controlled substances. The jury acquitted Bird of these charges (Counts 1–9), however, so they are largely irrelevant to the substance of this appeal. What *is* relevant, though, is how Bird used the cash profits from these operations, since that is what led to the two counts on which he *was* convicted.

In December 2014, Bird signed a contract to purchase land for $540,000. The contract broke Bird's payment obligations into

two parts.  First, Bird was required to pay a $267,667.77 down pay-ment, plus a deposit and closing costs.  After that, Bird had nine months to pay the $270,000 remainder.

The first payment was to be made to the trust account of the seller's attorney.  From February 6, 2015, to February 12, 2015, Bird made 22 cash deposits ranging from $7,000 to $9,000, which totaled $193,175.76.  As this suggests, the pattern of Bird's deposits was un-orthodox.  Over the course of just four of those days, Bird engaged in the following activity: four deposits at three separate bank branches on February 9, seven deposits at seven separate branches on February 10, three deposits at three separate branches on Feb-ruary 11, and seven deposits at seven separate branches on Febru-ary 12.  Finally, on February 12, the seller's attorney emailed Bird's real estate agent to 1) demand that the small cash deposits stop, 2) request Bird's identifying information so that he could file a Form 8300 required by the Internal Revenue Service, and 3) ask that the remaining sum ($74,492.01) be deposited in full by wire transfer. Bird complied with the attorney's request, and a Form 8300 was timely filed.

The second payment was to be paid into the seller's bank account.  From March 10, 2015, to October 26, 2015, Bird made 38 cash deposits and one check deposit into the seller's account.  None of these payments exceeded $10,000.  Again, many transactions oc-curred on consecutive days or within days of each other, and at least two transactions occurred on the same day (July 24, 2015). From this string of payments, the government produced as

22-10947              Opinion of the Court                    5

evidence a bank deposit slip dated June 25, 2015.  In the margin of the deposit slip were written three numbers that, when added together, exceeded $10,000.  However, the top two numbers, when added together, only equaled $7,900, which was what Bird ultimately deposited during that particular bank visit.

Based on Bird's conduct, the government added two counts of structuring to evade reporting requirements in violation of 31 U.S.C. § 5324(a)(3) and 18 U.S.C. § 2 to his indictment.  Count 10 corresponded to the first payment, while Count 11 corresponded to the second.

At trial, the government presented the jury with ample evidence laying out Bird's irregular deposit activity.  In addition, the jury heard from a number of witnesses.  Relevant here, Jimmy Kirby, a member of the Financial Crimes Enforcement Network, and Dan Ford, a financial investigator who provided contract work for the Drug Enforcement Agency, both testified.  Kirby testified about the reporting requirements relevant to the charges.  During his testimony, Kirby described Form 4789, which the government represented was the CTR that financial institutions filed when transactions exceeded the $10,000 threshold.  As it turns out, Form 4789 had been expired for around fifteen years.  However, it had been replaced by a different CTR, which for the transactions at issue here, has substantially the same reporting requirements.  In addition to Kirby, Ford also testified about Bird's conduct and knowledge of Form 4789.

Also critical to this appeal, Bird exercised his right to testify. On the stand, Bird stated on re-direct that he did not know about any reporting requirements prior to receiving the email from the seller's attorney regarding Form 8300. Under cross-examination, however, it appears—though it is unclear—Bird testified that he did not learn about the reporting requirements from that email (Q: "You knew from [the seller's attorney's] e-mail that depositing over $10,000 triggered reporting requirements with the Government, correct?" A: "No, I don't know. I'm—he's asking me to do something and I provided the information for him.").

A jury returned a verdict of guilty on Counts 10 and 11, and the district court imposed concurrent 24-month sentences for both. Bird timely appealed.

## II.  Sufficiency of the Evidence: Structuring to Evade

Bird first argues that the evidence produced at trial was insufficient to support his two structuring convictions. We disagree.

### A.  Law

We review the sufficiency of the evidence to support a conviction de novo; however, "we 'view the evidence in the light most favorable to the verdict and draw all reasonable inferences and credibility choices in the verdict's favor.'" *United States v. Iriele*, 977 F.3d 1155, 1168 (11th Cir. 2020) (alterations adopted) (quoting *United States v. Godwin*, 765 F.3d 1306, 1319 (11th Cir. 2014)). It is inconsequential that evidence leaves room for innocent explanations for the defendant's conduct. *See United States v. Howard*, 28 F.4th 180, 188 (11th Cir. 2022). Indeed, "[a] guilty verdict 'cannot

be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt.'" *Iriele*, 977 F.3d at 1168 (quoting *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013)).

As referenced above, 31 U.S.C. § 5313(a) requires domestic financial institutions to file a report—a CTR—"at the time and in the way the Secretary [of the Treasury] prescribes" whenever they are "involved in a transaction for the payment, receipt, or transfer of United States coins or currency . . . in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation." Pursuant to this authority, 31 C.F.R. § 1010.311 (2011) requires financial institutions to "file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000, except as otherwise provided in this section."[1] 31 U.S.C. § 5324(a)(3) then proscribes "structur[ing] . . . or attempt[ing] to structure . . . any transaction with one or more domestic financial institutions" "for the purpose of evading [these] reporting requirements."[2]

"Structuring" in the context of 31 U.S.C. § 5324 means "to break up a single transaction above the reporting threshold into two or more separate transactions—for the purpose of evading a

---

[1] None of the exceptions apply here.

[2] The corresponding rule to 31 U.S.C. § 5324 is Structured Transactions, 31 C.F.R. § 1010.314 (2011).

financial institution's reporting requirement." *Ratzlaf*, 510 U.S. at 136; *see also Aunspaugh*, 792 F.3d at 1311 ("To constitute structuring, a transaction of more than $10,000 must be broken into smaller increments, each of which typically is for less than $10,000, thus avoiding the reporting requirement."). The defendant need not have more than $10,000 in their physical possession at the time of the structuring to be found guilty under § 5324(a)(3). *United States v. Sperrazza*, 804 F.3d 1113, 1125 (11th Cir. 2015).

Of course, people are able to regularly engage in unreported transactions involving $10,000 or less without running afoul of § 5324(a)(3). The two keys to a conviction under this subsection are that a defendant 1) split into smaller increments a transaction that would have been for more than $10,000, and 2) fragmented the transaction *for the purpose* of avoiding the federal reporting requirements. *See Sperrazza*, 804 F.3d at 1124; *United States v. Lang*, 732 F.3d 1246, 1248 (11th Cir. 2013).

The *mens rea* element of § 5324(a) does not have to be proved directly. Indeed, we would be rather amazed—and perhaps investigators would be quite appreciative—if individuals engaged in structuring ever wrote on bank deposit slips or in the memo lines of checks: "For the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a)." Instead, a defendant's understanding of the reporting requirements and his intent to evade them can be inferred from circumstantial evidence. *See, e.g.*, *Aunspaugh*, 792 F.3d at 1310–11 (concluding that a reasonable jury could infer that the elements for a § 5324(a) conviction were met when the defendant

worked as a bank teller and split checks for over $10,000 into smaller amounts); *United States v. Vazquez*, 53 F.3d 1216, 1224–25 (11th Cir. 1995) (finding that a carpenter's irregular banking patterns, verbal statements, and deposits were sufficient to establish that he intentionally structured transactions to evade reporting requirements). And, again, we must draw all reasonable inferences created by circumstantial evidence in favor of the verdict. *See United States v. Jimenez*, 972 F.3d 1183, 1190 (11th Cir. 2020).

## B. Bird's Convictions

The cash deposits that Bird made to satisfy his first payment obligation for the land purchase formed the basis of his Count 10 structuring conviction. As noted above, the payments at issue consisted of 22 separate deposits under $10,000 made over the course of seven days. On two separate days, Bird visited seven different bank branches to make a deposit at each. In total, this seven-day string of payments summed to $193,175.76. A jury could certainly look at this flurry of deposit activity and reasonably infer that Bird made these staccato payments for the purpose of evading reporting requirements. This inference is buttressed by the fact that Bird demonstrated an ability to pay in larger sums when he wired the remaining $74,492.01 after an intervention by the seller's attorney. Indeed, Bird offers no coherent, alternative theory for this atypical deposit pattern, and even if he did, the jury was free to reject it in favor of a reasonable inference of guilt. *See Iriele*, 977 F.3d at 1168. In sum, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could find that the elements required for a structuring conviction on Count 10 were satisfied.

The 38 cash deposits and one check deposit that Bird made over the course of seven and a half months to fulfill his second payment obligation formed the basis of his Count 11 structuring conviction. While less stark than the activity underlying Count 10, we conclude that there is enough evidence to support the jury's inference that Bird structured these deposits for the purpose of evading reporting requirements. As outlined previously, all of these transactions were for less than $10,000. At least two deposits occurred on the same day, a handful of deposits occurred on consecutive days, and others occurred within a few days of each other. This, combined with the evidence of the June 25, 2015, bank deposit slip, provided sufficient circumstantial evidence to support the jury's verdict. True, Bird testified that there was some rhyme and reason to his deposits, claiming that he took what would have been monthly payments of the $270,000 and divided that into weekly deposits. However, the jury was entitled to reject Bird's claims. Evidently, that is what happened. With the requirement that we draw all reasonable inferences in the verdict's favor, *see Iriele*, 977 F.3d at 1168, we see no reason to disturb the jury's conclusion on Count 11.

Still, Bird marshals a number of arguments for why we should vacate these convictions, none of which are persuasive enough to overcome the deference that we afford a jury's verdict.

To start, and specific to Count 10, Bird points out that the seller's attorney timely filed Form 8300 with information that Bird supplied upon request. Bird contends that since Form 8300

provided the details of the first payment, the financial institution to which he made the deposits was absolved of having to file a CTR. Thus, Bird appears to argue, there was no evidence that he intended to evade reporting requirements. This argument falls short for at least two reasons. First, we have previously explained that 31 U.S.C. § 5324(a)(3) "operates without regard for whether an individual transaction is, itself, reportable under the Bank Secrecy Act." *United States v. Phipps*, 81 F.3d 1056, 1061 (11th Cir. 1996) (internal quotation marks omitted). That is, § 5324(a)(3) is violated at the time the structuring occurs, even if a CTR never ultimately has to be filed. Second (and with the above in mind), the deposit activity forming the basis of Count 10 only ceased after the seller's attorney intervened. A reasonable jury could conclude that even though Bird decided to acquiesce to the attorney's commands, his earlier deposits were intentionally structured to evade § 5313's reporting requirements.

None of the other arguments that Bird throws against the wall manage to stick either. Bird attempts to distinguish his case from cases like *Sperrazza* and *Aunspaugh* by highlighting a handful of inconsequential differences and making a few conclusory assertions.

Bird emphasizes the validity of the land sale contract, the involvement of experienced attorneys, and the filing of Form 8300. Bird stresses that this evidence of legitimate activity demonstrates that he intended to act transparently and belies any suggestion that he intended to elude reporting requirements. Yet, financial crimes

are often mixtures of legal and illegal activity—it is the jury's role to act as the sieve. While the jury could have inferred from the evidence that Bird genuinely tried to be transparent, it also could have (and did) infer the opposite. On appellate review, we draw all reasonable inferences in the verdict's favor, *Iriele*, 977 F.3d at 1168, and we see nothing unreasonable about the jury's inferences here.

Bird also points out that, unlike in other cases, he was not enriching his own coffers, but rather depositing money in other individuals' accounts pursuant to a contract. *Contra Sperrazza*, 804 F.3d at 1116–17. This distinction is irrelevant. The application of 31 U.S.C. § 5324(a)(3) is wholly independent of the direction that the money flows. What matters is that the transaction—whatever it might be—is structured with the intent to evade reporting requirements. Here, a jury reasonably concluded that was the case.

Bird goes on to argue that, unlike in *Sperrazza*, he did not possess a large, single sum of cash that he held in order to make smaller deposits. *Id.* at 1117. Yet, *Sperrazza* itself established that a structuring charge under 31 U.S.C. § 5324(a)(3) does *not* require the government "to show the defendant had in hand at one time $10,000 or more of the funds he allegedly structured." *Id.* at 1125. And while Bird maintains that he simply made payments from the steady profits of his medical clinic, which was largely a cash business, a jury was free to reject that claim, especially given the fact that Bird at one point made a single $74,492.01 wire transfer. So, this argument also falls flat.

Finally, in a conclusory manner, Bird argues that there was simply no evidence—direct or circumstantial—to show that he knew about the reporting requirements and structured his payments with the purpose of evading them.

With regard to direct evidence, Bird's contention lacks both force and accuracy. As to force, we have already noted that the requisite *mens rea* to support a structuring conviction may be readily inferred through circumstantial evidence. *See, e.g.*, *Aunspaugh*, 792 F.3d at 1310–11; *Vazquez*, 53 F.3d at 1224–25. As to accuracy, the record shows that Bird elected to take the stand at trial. There, he testified that he did not know about any reporting requirements prior to the seller's attorney informing him of Form 8300. While we rarely second-guess trial strategy—and we have no reason to do so here—we repeatedly remind litigants of the potential consequences of testifying at trial: "'[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt' when combined with other evidence." *United States v. Pon*, 963 F.3d 1207, 1234 (11th Cir. 2020) (quoting *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995)). Here, combined with the strange pattern of small deposits, disbelief of Bird's testimony could serve as substantive evidence that he possessed the requisite knowledge and intent for a conviction under § 5324(a)(3). And with regard to circumstantial evidence, the record is replete with evidence of Bird's irregular payment activity, which a jury could reasonably use to infer that Bird possessed the necessary *mens rea* for the offense.

In sum, viewing the evidence in the light most favorable to the verdict, we conclude that a "reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Iriele*, 977 F.3d at 1168.

### C.  Evading Form 4789

Bird alternatively makes an argument of impossibility. While crafty, we can quickly dispose of the challenge.  Bird points to the jury instruction used in his trial, which read in relevant part:

> It's a federal crime under certain circumstances for anyone to knowingly evade a currency-transaction reporting requirement.
>
> Domestic financial institutions and banks (with specific exceptions) must file currency-transaction reports (*Form 4789*) with the Government.  They must list all deposits, withdrawals, transfers, or payments involving more than $10,000 in cash or currency.
>
> The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
>
> First: The Defendant knowingly structured or helped to structure a currency transaction;
>
> Second: the purpose of the structured transaction was to evade *the transaction-reporting requirements*; and
>
> Third: the structured transaction involved one or more domestic financial institutions.

22-10947                Opinion of the Court                15

(emphases added).[3] Bird contends that because the instructions 1) required proof of evading reporting requirements and 2) specifically listed filing Form 4789 as a requirement, his conviction cannot stand. Since Form 4789 had been replaced when he made the transactions at issue, Bird maintains, he "could not have committed the crime of evading a banking CTR Form 4789."

Bird's argument makes too much of the erroneous parenthetical in the opening paragraph of the instructions by attempting to graft it into an element of the offense. We do not share his interpretation. Rather, we find that the instructions properly informed the jury of the three elements required to sustain a conviction under 31 U.S.C. § 5324(a)(3). Both the second element and the introductory paragraph referred to "transaction-reporting requirements" generally. The introductory paragraph further explained that one such requirement is the need for domestic financial institutions to submit CTR's with certain information. That the instruction also provided an example of a specific CTR is immaterial to the offense itself, which requires proof that a defendant evaded current reporting requirements—not a specific form. This conclusion is further supported by the government's representation that Form 4789 was replaced by a CTR that, for the conduct at issue here, has substantially identical reporting requirements.

---

[3] These instructions were the Eleventh Circuit's pattern jury instruction for the offense of structuring at the time of Bird's trial. They have since been updated.

Further, even if we were to decide that the instructions do in fact list an additional element—requiring proof that Bird intended to evade transaction-reporting requirements *and* intended to evade Form 4789 specifically—that would not alter the result. The Supreme Court has held that "when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction." *Musacchio v. United States*, 577 U.S. 237, 243 (2016). Indeed, "[w]hen a jury finds guilt after being instructed on all elements of the charged crime plus one more element, the jury has made all the findings that due process requires." *Id.* Here, we conclude that the instructions properly listed the statutory elements for structuring in violation of 31 U.S.C. § 5324(a)(3), and the jury concluded that the government satisfied its burden of proof on these points. That the government could not prove Bird intended to evade Form 4789 specifically does not undermine the soundness of the verdict.

### III.  Erroneous Jury Instruction

This leads us to Bird's final argument. Looking again to the jury instructions, Bird contends that the explicit inclusion of Form 4789 rendered the instructions plainly erroneous and prejudicial. As Bird sees it, the instructions required the jury to determine that he had knowledge of, and an intent to evade, a form that did not exist. This nonsensical instruction, combined with Ford and Kirby's testimonies that they could not find a Form 4789 filed for

Bird's transactions, prejudicially misled the jury—or so the argument goes.

While some arguments stumble right out of the gate, others never see the gate open. This argument meets the latter fate. We have long held that courts are precluded from reviewing errors invited by the challenging party. *United States v. Maradiaga*, 987 F.3d 1315, 1322 (11th Cir. 2021); *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1293–94 (11th Cir. 2002); *United States v. Davis*, 443 F.2d 560, 564–65 (5th Cir. 1971).[4] This is true "even if plain error would result." *United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010). A party that challenges jury instructions on appeal after proposing the precise language in those instructions constitutes "a textbook case of invited error." *Maradiaga*, 987 F.3d at 1322.

Here, Bird and the government jointly proposed the jury instructions that the district court ultimately used. By supplying the instructions, Bird invited any purported error. Consequently, we decline to review his challenge to the jury instructions and thus will not vacate his convictions on this ground.

## IV. Conclusion

For the reasons discussed above, we conclude that there is no basis for vacating the convictions of Bird. The judgment of the district court is therefore affirmed.

---

[4] Decisions of the former Fifth Circuit issued before October 1, 1981 constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

**AFFIRMED.**