[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13068

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MAURICE ANTONIO KENT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:17-cr-00039-JPB-WEJ-1

_____

Before WILSON, JILL PRYOR, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal concerns the circumstances in which a police officer's statement that recounts witness statements that implicate the defendant in a crime may be offered at a criminal trial for a non-hearsay purpose.

Maurice Kent was a member of a violent gang. The government charged Kent with RICO conspiracy and five substantive crimes, including the attempted murder of Shadeed Muhammad. As an overt act of the RICO conspiracy, the government alleged that the gang murdered a former gang member, Qualeef Rhode, for cooperating with the police's investigation into the attempted murder of Muhammad. Specifically, the government's theory was that Kent and other gang members believed that Rhodes told the police that Kent had attempted to murder Muhammad and, then, murdered Rhodes for that reason.

To support this theory, the government introduced an investigator's testimony from a preliminary hearing in a related case, which identified Rhodes as cooperating with law enforcement to implicate Kent in the attempted murder of Muhammad. By offering the testimony, the government sought to establish that other gang members present at the hearing learned of Rhodes's apparent cooperation and murdered him because of it, *i.e.*, the government offered the out-of-court statements for the effect they had on the listener.

Kent argues that this testimony was hearsay, and its admission violated his Confrontation Clause rights. Our caselaw has in at least two instances deemed inadmissible law enforcement testimony about witness statements, even when offered for non-hearsay purposes. *See United States v. Arbolaez*, 450 F.3d 1283, 1290 (11th Cir. 2006); *United States v. Rodriguez*, 524 F.2d 485, 487 (5th Cir. 1975). But we agree with the district court that the testimony in this case was admissible. It was not hearsay because it was offered for the effect it had on the listeners and not for the truth of the matter asserted. The testimony was indisputably relevant for that purpose. And we believe the district court took sufficient steps to ensure that the jury did not consider these out-of-court statements as substantive evidence of Kent's guilt on the charge of attempting to murder Muhammad. Accordingly, we affirm.

## I.

Maurice Kent was a leader in an Atlanta-area chapter of the 135 Piru gang. During a weekend when members of various chapters of the gang gathered in the Atlanta area, multiple gang members went to a nightclub and a fight broke out inside the club and moved into the parking lot. During the fight in the parking lot, Shadeed Muhammed, a member of a different chapter of the gang, and security guard Charles Smith were shot.

Maurice Kent rode to the nightclub with his girlfriend Charne Darden. Kent's younger brother Malique Dixon and a member of a different chapter of the gang Qualeef Rhodes were also in the car. None of them entered the club, but Kent, Dixon,

and Rhodes exited the car and went towards the fight when it continued in the parking lot.

Kent returned to Darden's car holding a firearm and with a bullet wound in his leg. As Kent entered the car, bullets struck the vehicle, and Kent discharged his firearm. As Darden drove away from the scene, officers observed Kent throw an object out of the window and Rhodes run alongside the car. The officers eventually trapped the car and found a firearm with Kent's DNA and fingerprints on it close to where Kent threw an object out of the car. Investigators also found shell casings in Darden's car and in the parking lot that matched that gun. Police took Dixon, Darden, and Rhodes to headquarters to question them but later released them. Kent was taken to a hospital to treat his gunshot wound and then booked in DeKalb County Jail.

Kent had a preliminary hearing in the county magistrate court about three weeks after the shooting. His mother, twin brother Michael, and two other gang members, Alexyeus Harris and Naja Finch, attended the hearing. At the hearing, an investigator testified that Rhodes told police he was in the vehicle with Kent at the nightclub, that he knew Kent from social media, and that Kent was the shooter.

When Kent returned to the jail that afternoon, he spoke with Michael and Harris about Rhodes's cooperation with the police. Kent told Michael to contact Christopher Nwanjoku, a fellow gang member, to order all gang members to take down their social media because Rhodes spoke with police. Michael told Kent he

knew Rhodes "said everything" and later called Nwanjoku and other gang members to discuss Rhodes and his whereabouts.

Two days later, Nwanjoku and other gang members met to discuss Rhodes's statements to the police. The gang members devised and executed a plan to kill Rhodes. The gang members who killed Rhodes reported the killing to Nwanjoku a few hours after it was done.

Kent and his four codefendants were indicted and charged with RICO conspiracy. Kent was also charged with five other substantive crimes, including the attempted murder of Muhammed. The indictment also listed the nightclub shooting and Rhodes's murder as overt acts of the RICO conspiracy.

Kent filed a motion in limine to prohibit the government from introducing a transcript and recording of the investigator's testimony that Rhodes identified Kent as the shooter at the nightclub. He argued that the testimony was hearsay, and its admission would violate his Confrontation Clause rights. The government responded that the statements were not hearsay because they were being offered to prove the effect they had on Kent and the others in the audience at the hearing, *i.e.*, after learning that Rhodes had apparently cooperated with police, Kent and other gang members directed and carried out Rhodes's killing.

The district court agreed the testimony was not hearsay but granted the motion in limine in part to redact any statements that identified Kent as the shooter. The court admitted the investigator's testimony that Rhodes identified Kent as being in Darden's

car in the parking lot, that Kent got out of the car when they heard the fight, that Rhodes ran alongside the car after the shooting, and that, before that night, Rhodes knew of Kent only through social media. The district court also instructed the jury to consider the testimony only for the effect it had on the listeners in the courtroom and not to determine whether Kent engaged in the conduct described.

The jury convicted Kent on all counts, and the district court sentenced him to a combined sentence of 40 years. Kent timely appealed.

## II.

We review for an abuse of discretion the district court's decision to admit statements over a hearsay objection. *See Arbolaez*, 450 F.3d at 1289 (citing *United States v. Cunningham*, 194 F.3d 1186, 1195 (11th Cir. 1999)). But we review *de novo* constitutional questions, like whether that testimony violates the Confrontation Clause. *See United States v. Underwood*, 446 F.3d 1340, 1345 (11th Cir. 2006) (citing *United States v. Brown*, 364 F.3d 1266, 1268 (11th Cir. 2004)).

## III.

Kent argues that the investigator's testimony was inadmissible hearsay because it was offered for the truth of the matter asserted, *i.e.*, that Kent was the shooter at the nightclub. He says that, because the testimony was inadmissible hearsay, its admission violated his rights under the Confrontation Clause because he had no

opportunity to cross examine the investigator or Rhodes. The government argues that the testimony was not hearsay because it was offered to establish the effect it had on the gang members who attended the preliminary hearing and, because it was not hearsay, it could not violate Kent's rights under the Confrontation Clause. We agree with the government.

We have "long recognized that statements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant" for a non-hearsay purpose and "the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement." *United States v. Jiminez*, 564 F.3d 1280, 1288 (11th Cir. 2009) (cleaned up). Under our caselaw, a court confronted with an out-of-court statement should ask (1) whether that statement is offered for a non-hearsay purpose, (2) whether that non-hearsay purpose is relevant, and (3) whether the probative value of the evidence is substantially outweighed by any unfair prejudice that would arise from admitting it. We will walk through each step in turn.

First, we must inquire whether this out-of-court statement is hearsay under Rule 801(c). "Hearsay is a statement, other than one made by a declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) (citing Fed. R. Evid. 801(c)). Thus, an out-of-court statement that is offered for a purpose other than proving the truth of the matter—such as the effect a statement

had on a listener—is not hearsay and not subject to exclusion on that basis. *See id*.

It is clear on this record that both parts of this out-of-court statement—Rhodes's statements to the investigator and the investigator's testimony at the preliminary hearing—were offered to prove something other than the truth of the matter asserted. The government offered the officer's testimony about Rhodes's putative cooperation as evidence that Kent and the other gang members had a motive to murder Rhodes. That is, the investigator's testimony was relevant because it influenced Kent and the other gang members who heard that testimony at the preliminary hearing. The government did not seek to introduce this evidence as proof that Kent in fact attempted to murder Muhammad. Instead, under the government's theory, it was of no consequence whether Rhodes's statements to police or the investigator's testimony about those statements were true.

Because these statements were not hearsay, Kent's Confrontation Clause argument necessarily fails. The Confrontation Clause provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This Court has explained that "[t]here can be no doubt that the Confrontation Clause prohibits *only* statements that constitute impermissible hearsay." *Jiminez*, 564 F.3d at 1286. Accordingly, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9

(2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). Because the investigator's testimony at the preliminary hearing was not hearsay, its admission did not violate Kent's rights under the Confrontation Clause.

Second, we must ask whether the statement's non-hearsay purpose was relevant. *See* Fed. R. Evid. 401. Just as a party cannot introduce irrelevant evidence generally, a party cannot launder hearsay into a trial by offering it for an *irrelevant* non-hearsay purpose. *See, e.g.*, *United States v. Yousef*, 327 F.3d 56, 157 (2d Cir. 2003) (explaining that "whether proffered as hearsay or non-hearsay" the evidence at issue "was irrelevant and, hence, inadmissible under Rule 402"), *overruled in part on other grounds by Montejo v. Louisiana*, 556 U.S. 778, 797 (2009).

We agree with the district court that the out-of-court statements in this case were relevant for a non-hearsay purpose. Indeed, this testimony was central to the government's effort to prove that the gang murdered Rhodes. In addition to this statement, the government also presented evidence that, after the hearing, Kent spoke to gang members who attended the hearing about Rhodes's cooperation with the police. Kent directed them to talk to a third gang member about Rhodes's cooperation. The government presented evidence that, a few days later, gang members devised and carried out a plan to kill Rhodes because they believed he was cooperating with the police. There is no dispute that evidence that tends to prove a defendant's motive to murder is relevant in a case about that murder. *See, e.g.*, *United States v. Clark*, 988 F.2d 1459,

1465 (6th Cir. 1993) (holding that evidence of a defendant's motive for a murder is relevant).

Kent erroneously argues that our decisions in *Arbolaez*, 450 F.3d 1283, and *Rodriguez*, 524 F.2d 485, require us to reverse the district court. In both cases, an agent sought to testify about witness statements that implicated the defendants in criminal actions for the purported non-hearsay purpose of explaining why the agent took certain actions. We held that the agents' testimony was inadmissible. *See Arbolaez*, 450 F.3d at 1290; *Rodriguez*, 524 F.2d at 487. In *Arbolaez*, we relied on *Rodriguez* to hold that "the details of statements received by a government agent and later used as the basis for an affidavit in support of a search warrant, even when purportedly admitted not for the truthfulness of what the informant said but to show why the agent did what he did after he received that information, constitutes inadmissible hearsay." *Arbolaez*, 450 F.3d at 1290 (cleaned up) (quoting *Rodriguez*, 524 F.2d at 487).

We do not read *Arbolaez* or *Rodriguez* to establish a bright-line rule that forbids the introduction of an agent's testimony about a witness's statements that implicate the defendant. Instead, the problem in both *Arbolaez* and *Rodriguez* was that the government sought to introduce an out-of-court statement for an *irrelevant* non-hearsay purpose. The agents' reasons for acting were not at issue in either case, so it did not matter that the agents acted because of witness statements. The only relevant purpose for introducing the agents' statements in *Arbolaez* and *Rodriguez* was a hearsay purpose; the statements were therefore hearsay. Here, on the other hand,

22-13068                Opinion of the Court                11

the detective's testimony regarding Rhodes's statements to police was relevant because of that testimony's effect on the listeners—to prove why Kent and his fellow gang members directed and carried out Rhodes's killing.

Contrary to Kent's reading of *Arbolaez* and *Rodriguez*, our precedent confirms that a witness's out-of-court statement to a police officer may be admissible if offered for a relevant non-hearsay purpose. For example, in *Jiminez*, we held that a detective's testimony that a defendant's brother implicated the defendant in a drug operation was admissible to explain the detective's later course of action. *Jiminez*, 564 F.3d at 1287. The testimony was admissible because it was offered in response to the defendant's suggestion that the detective lied about the reason he re-interviewed the defendant's brother—a relevant non-hearsay purpose under Rule 401. *Id*. We thus acknowledged that inculpatory evidence, including testimony from a government agent regarding witness statements, may be admissible if it is relevant for a non-hearsay purpose.

Third, having determined that there was a relevant non-hearsay purpose for this out-of-court statement, we must ask whether the probative value of that evidence "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury" or the like. Fed. R. Evid. 403. When we speak of "unfair prejudice," we mean "an undue tendency to suggest decision on an improper basis." *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403 advisory committee's note to 1972 proposed rule). With respect to an out-of-court

statement, the typical risk of unfair prejudice is that the jury could consider the statement for the truth of the matter asserted, even if it has been introduced for a non-hearsay purpose. Accordingly, a court should usually mitigate this risk by instructing the jury about how to consider the evidence. Nonetheless, we have recognized that, sometimes, the risk is so great that no limiting instruction can adequately eliminate it. *See Rodriguez*, 524 F.2d at 487.

Here, we are convinced that the district court sufficiently reduced the risk that the jury would improperly consider this out-of-court statement for the truth of the matter asserted. The district court redacted the most prejudicial portions of the investigator's testimony that identified Kent as the shooter at the nightclub. The district court also instructed the jury to consider the testimony only for the effect it had on the listeners who attended the preliminary hearing. On these facts, the district court was within its discretion to conclude that the probative value of the testimony it admitted was not substantially outweighed by any unfair prejudice to Kent.

## IV.

The district court is **AFFIRMED**.