**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12897

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ANTHONY LAMON FRAZIER,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:21-cr-00371-CLM-JHE-1

_____

Before NEWSOM, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Anthony Lamon Frazier appeals his convictions and sentence of 120 months' imprisonment for 23 counts of laundering the proceeds of drug distribution, 4 counts of structuring transactions

to evade reporting requirements, 1 count of conspiring to commit wire fraud, 1 count of laundering the proceeds of wire fraud, and 3 counts of filing a false tax return. Frazier presents four issues on appeal, which we address in turn. After review, we affirm Frazier's convictions and sentence.

## I.  MOTION TO SEVER

First, Frazier contends the district court erred in denying his motion to sever the Count 28 wire fraud conspiracy charge and the Count 29 wire fraud money laundering charge from the other charges. An indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Even where joinder is proper under Rule 8,[1] if a defendant appears to be prejudiced by the joinder of offenses, a district court "may order separate trial of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "The decision whether to grant a severance lies within the district court's sound and substantial discretion," and

---

[1] Frazier has abandoned any argument that Counts 28 and 29 were improperly joined with Counts 1 to 27 and 35 to 37 under Rule 8. While Frazier's opening brief suggests joinder may have been inappropriate under Rule 8, he offers no supporting argument or authority for this claim and has failed to adequately brief it by referencing it only in passing. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (explaining an appellant abandons a claim where he makes only a passing reference to it or raises it in a perfunctory manner without supporting argument and authority).

"[w]e will not reverse the denial of a severance motion absent a clear abuse of discretion resulting in compelling prejudice against which the district court could offer no protection." *United States v. Mosquera*, 886 F.3d 1032, 1041 (11th Cir. 2018) (quotation marks omitted). "To show compelling prejudice, a defendant must establish that a joint trial would actually prejudice the defendant and that a severance is the only proper remedy for that prejudice—jury instructions or some other remedy short of severance will not work." *United States v. Lopez*, 649 F.3d 1222, 1234 (11th Cir. 2011). This is a heavy burden. *Id.* Nonetheless, a defendant may make this showing, in part, "where a cumulative and prejudicial 'spill over' may prevent the jury from sifting through the evidence to make an individualized determination of guilt as to each defendant." *Mosquera*, 886 F.3d at 1041-42.

The risk of a "spillover effect" may exist when the joinder of charges or defendants results in the admission of evidence that would have been inadmissible in a severed trial. *See Lopez*, 649 F.3d at 1235. Factors relevant to assessing the existence of a prejudicial spillover include (1) whether the jury meticulously sifted the evidence for all counts; (2) whether the evidence was inflammatory in nature; (3) whether the admission of the other evidence significantly altered the defendant's trial strategy; and (4) the strength of the evidence against the defendant on the remaining counts. *United States v. Prosperi*, 201 F.3d 1335, 1346 (11th Cir. 2000).

The district court did not abuse its discretion in denying Frazier's motion to sever. *See United States v. Hersh*, 297 F.3d 1233,

1241 (11th Cir. 2002) (reviewing the denial of a motion to sever under Federal Rule of Criminal Procedure 14 for an abuse of discretion). Frazier has failed to show he suffered compelling prejudice from the district court's denial of his motion to sever under Rule 14 because the court issued several cautionary instructions, and there was strong independent evidence of Frazier's guilt of Counts 28 and 29. Specifically, Frazier failed to show "severance [was] the only proper remedy" to address the potential prejudice of trying Count 28 and 29 with the other counts in the indictment. *See Lopez*, 649 F.3d at 1234. Indeed, even assuming evidence of Frazier's drug money laundering, structuring, false tax returns, and prior drug conviction would have been inadmissible at a severed trial on Counts 28 to 29 and presented a risk of prejudicial spillover, this risk was mitigated by the court's explicit instructions to the jury that it was required to "consider each crime and the evidence relating to it separately and individually," that a finding Frazier may be guilty of one count could "not affect [its] verdict for any other count," that Frazier was "on trial only for the specific crimes charged in the indictment," and that "evidence of acts allegedly done by Mr. Frazier on other occasions that may be similar to acts with which he is currently charged" could not be used "to decide whether Mr. Frazier engaged in the activity alleged in this indictment." *See United States v. Kennard*, 472 F.3d 851, 859 (11th Cir. 2006) (explaining a limiting instruction will normally mitigate the risk of spillover effects). This Court must presume the jury followed these instructions, and Frazier has failed to overcome this presumption. *See United States v. Almanzar*, 634 F.3d 1214, 1222

(11th Cir. 2011) (stating absent evidence to the contrary, we presume "jurors follow the instructions given by the district court").

Frazier contends the jury did not sift through the evidence for all counts since it deliberated for only 82 minutes, but the jury's brief deliberations and uniform verdict, alone, are insufficient to show Frazier suffered compelling prejudice, particularly since the jury's short deliberations may have simply reflected its view about the strength of the Government's case. *See United States v. Hernandez*, 921 F.2d 1569, 1580 (11th Cir. 1991) (stating relatively short jury deliberations combined with a unanimous jury verdict, alone, are insufficient to show compelling prejudice, particularly since they may signal strong evidence). Additionally, the evidence supporting Counts 28 and 29 was largely distinct from the evidence supporting the other charges, and it is therefore unlikely the jury would have had difficulty sifting the evidence for each count. *See Prosperi*, 201 F.3d at 1346 (stating in assessing whether the jury meticulously sifted the evidence for each count, the more dissimilar the evidence supporting each count is, the less likely it is to result in prejudicial spillover).

Moreover, contrary to Frazier's characterization of the evidence supporting Counts 28 and 29 as "tenuous and circumstantial," there was strong evidence Frazier conspired with Frederick Andre Spencer to defraud Q.W. and then laundered the proceeds. Trial evidence showed the following: (1) Q.W. wired $500,000 to the Head of Game account based on an agreement the money would be used to grow the company; (2) Frazier transferred

$214,825 to a "Mom & Son's Towing" account owned by Spencer's mother one day after receiving the transfer and subsequently made several cash withdrawals from the Head of Game account and into his personal account; (3) Spencer or his mother spent portions of Q.W.'s money on dental bills, water bills, and other personal expenses; and (4) Frazier used Q.W.'s money to pay off credit card debt and to flip houses, for which he deposited the proceeds into the Frazier Investment account.

Furthermore, much of the evidence of Frazier's drug money laundering, structuring, and false tax returns consisted of financial records, which was not particularly inflammatory. *See Prosperi*, 201 F.3d at 1346. Even if evidence of Frazier's drug trafficking was arguably inflammatory, this alone is insufficient to show compelling prejudice, particularly in light of the court's limiting instructions. Finally, while Frazier asserts the Government's discussion of his prior conviction required him to alter his trial strategy to point out flaws in his conviction, he does not explain how this "significantly" altered his trial strategy as a whole, especially since the Government did not rely on Frazier's prior drug conviction to establish his guilt of defrauding Q.W. and laundering the proceeds.

For these reasons, we reject Frazier's challenge to the district court's denial of his motion to sever.

## II. EXCLUSION OF EVIDENCE

Frazier asserts the district court abused its discretion in denying his motions in limine to exclude evidence of his prior drug

conviction and the K-9 sweeps of his truck under Federal Rules of Evidence 403 and 404(b).

## A. Intrinsic Evidence

"Evidence of criminal activity other than the charged offense may be admissible if it is 'intrinsic evidence' of the charged offense," meaning it "arises out of the same transaction or series of transactions as the charged offense, is necessary to complete the story of the crime, or is inextricably intertwined with the evidence regarding the charged offense." *United States v. Harding*, 104 F.4th 1291, 1296 (11th Cir. 2024). "Evidence is necessary to complete the story of a crime when the evidence explains the context, motive, and set-up of the crime or reveals important details about the criminal scheme." *Id.* at 1297 (quotation marks omitted). "Evidence is inextricably intertwined with a charged crime if it forms an integral and natural part of an account of a crime, or is vital to an understanding of the context of the government's case." *Id.* (internal citation and quotation marks modified).

Because Counts 1 to 23 charged Frazier with laundering the proceeds of drug trafficking between July 2017 and September 2020, evidence showing Frazier was engaged in drug distribution between 2017 and 2020—including Frazier's prior drug conviction arising out of an October 2019 controlled transaction—was inextricably intertwined with these charges since that evidence both "form[ed] an integral and natural part of an account of" Frazier's drug money laundering and was "vital to an understanding of the context of the government's case." *See id.* at 1297. It was also

"necessary to complete the story of" Frazier's drug money launder-
ing because, even though the Government did not show Frazier
laundered the proceeds from the October 2019 controlled buy, the
controlled buy indicated Frazier participated in cash transactions
for drugs during the relevant timeframe, and therefore explained
"the context, motive, and set-up of" the drug money laundering
charges. *See id.* Moreover, despite Frazier's arguments regarding
temporal remoteness, in *Holt*, this Court ruled the evidence of 1995
drug dealings was necessary for the government to complete the
story of a drug conspiracy that began in 2000, which represents a
greater temporal gap than the months between Frazier's October
2019 drug dealing and his purported money laundering in February
2019 and March 2020. *See United States v. Holt*, 777 F.3d 1234, 1261–
62 (11th Cir. 2015). The district court did not abuse its discretion
in finding Frazier's prior drug conviction was intrinsic evidence.[2]
*See United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) (stating
we "review[] a district court's evidentiary rulings for a clear abuse
of discretion").

*B. Rule 403*

A "court may exclude relevant evidence if its probative value
is substantially outweighed by a danger of one or more of the

---

[2] Because the district court did not abuse its discretion in determining evidence
of Frazier's prior drug conviction was admissible as intrinsic evidence, this
Court need not consider Frazier's arguments the district court abused its dis-
cretion in admitting this evidence as extrinsic act evidence under Federal Rule
Evidence 404(b).

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Lopez*, 649 F.3d at 1247 (quotation marks omitted). When we review "issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Dodds*, 347 F.3d at 897 (quotation marks omitted). "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis." *United States v. Kent*, 93 F.4th 1213, 1220 (11th Cir. 2024) (quotation marks omitted). While limiting instructions reduce the risk of unfair prejudice, "sometimes, the risk is so great that no limiting instruction can adequately eliminate it." *Id.*

Frazier has not shown the district court abused its discretion in rejecting his attempt to exclude evidence of his prior drug conviction and the August 2020 K-9 sweeps under Federal Rule of Evidence 403. Viewing Frazier's prior conviction in a light most favorable to its admission, both the fact of the prior conviction and the details surrounding it—including that the offense involved a controlled transaction in October 2019—were highly probative because they showed Frazier was involved in a cash transaction for drugs during the timeframe in which he purportedly laundered the proceeds of drug sales. The same can be said of the two K-9 alerts, which suggested Frazier had drugs in his car during the same month in which the Government alleged he engaged in several acts

of drug money laundering.  And while Frazier argues the K-9, Quincey, could also detect odors from potentially legal substances, this did not vitiate the probative value of the alerts, particularly since Quincey was "very good" at detecting narcotics and did not alert to any of the other vehicles in the parking lot.

Furthermore, the prejudicial impact of Frazier's prior drug conviction and the K-9 searches was mitigated by the court's cautionary limiting instructions.  *See Kent*, 93 F.4th at 1220.  Lastly, video evidence of two K-9 alerts around Frazier's truck in a parking lot is not the type of evidence that would have "an undue tendency to suggest decision on an improper basis."  *See id.*

For these reasons, we deny Frazier's challenge to the district court's denial of his motions in limine to exclude evidence of his prior conviction and the K-9 sweeps of his truck.

## III.  JUDGMENT OF ACQUITTAL

Frazier also contends the district court erred in denying his motion for a judgment of acquittal on all counts.  We address each grouping of convictions in turn.

### A.  Money Laundering/Structuring (Counts 1-27)

To establish money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), the government must prove "the defendant (1) knowingly conducted a financial transaction, (2) which he knew involved funds that were the proceeds of some form of unlawful activity, (3) where the funds involved in the financial transaction in fact were the proceeds of a specified unlawful activity, and (4) that

the defendant engaged in the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity." *United States v. Tarkoff*, 242 F.3d 991, 994 (11th Cir. 2001) (quotation marks omitted).  For the fourth element, the government may alternatively show the defendant engaged in the financial transaction knowing it was designed "to avoid a transaction reporting requirement under State or Federal law."  18 U.S.C. § 1956(a)(1)(B)(ii); *see United States v. Calderon*, 169 F.3d 718, 722 (11th Cir. 1999).

Under the Bank Secrecy Act and its accompanying federal regulations, financial institutions must "report any transaction in currency of more than $10,000 through the filing of a currency transaction report (CTR) with the U.S. Department of the Treasury."  *United States v. Zayas*, 141 F.4th 1217, 1221 (11th Cir. 2025); 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311.  Additionally, a financial institution, including the United States Postal Service, may not issue or sell a money order "to any individual in connection with a transaction . . . which involves United States coins or currency . . . in amounts or denominations of $3,000 or more unless," in relevant part, that individual furnishes identification and the financial institution verifies and records this information.  31 U.S.C. §§ 5325(a)(2), 5312(a)(2)(V); 31 C.F.R. § 1010.415(a)(2), (c).  Upon the request of the Secretary of the Treasury, a financial institution must report this information.  31 U.S.C. § 5325(b).

It is illegal for any person, "for the purpose of evading [these] reporting requirements . . . [to] structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." *Id.* § 5324(a)(3). "Structuring in the context of 31 U.S.C. § 5324 means to break up a single transaction above the reporting threshold into two or more separate transactions—for the purpose of evading a financial institution's reporting requirement." *United States v. Bird*, 79 F.4th 1344, 1349 (11th Cir. 2023) (quotation marks omitted). To prove structuring, the government must show the defendant (1) split a transaction that would have otherwise exceeded the reporting threshold into smaller increments and (2) did so for the purpose of avoiding the federal reporting requirements. *Id.* The mens rea element of § 5324(a) need not be proved directly and instead may be inferred from circumstantial evidence. *Id.*

Regarding the drug laundering charges in Counts 1 to 23, the Government's testimony established (1) Frazier sold 666 grams of methamphetamine to a confidential informant in October 2019, (2) between May and September 2020, he visited the residences of known drug dealers before traveling to post offices and PNC Banks in different cities, (3) a K-9 twice alerted to the presence of drugs in Frazier's truck in August 2020, (4) he was found guilty in a jury trial of possessing with intent to distribute 50 grams of more of methamphetamine. This evidence was more than sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Frazier was involved in drug distribution, even without investigators ever seeing Frazier carrying narcotics or seizing narcotics after he

was arrested. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (explaining for sufficiency challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements beyond a reasonable doubt"); *United States v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998) ("We review sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict.").

The Government also presented evidence by which a rational trier of fact could find beyond a reasonable doubt that Frazier knowingly attempted "to conceal or disguise the nature, location, source, ownership, or control of the proceeds of" his drug distribution through financial transactions. *See Tarkoff*, 242 F.3d at 994. Specifically, Postal Inspector Robert Verhine testified none of the name and address combinations on the postal money orders deposited into the Frazier Investment account or Head of Game account in Counts 1 to 12, 14, and 16 to 19 were valid and the handwriting on the money orders looked similar. Trial testimony showed the following: (1) investigators never saw a vehicle parked at FF Autos between 2018 and 2020; (2) Frazier traveled between various post offices and banks; (3) law enforcement recovered two postal money orders addressed to the Head of Game account from Frazier's truck after his arrest; (4) Frazier carried or had quick access to approximately $4,000 to $5,000 in cash; (5) an undercover investigator witnessed Frazier pull a large amount of cash out of his pocket at a post office; and (6) investigators recovered more than

$45,000 from a safe on a property belonging to Frazier.  Based on this evidence, with respect to Counts 1 to 12, 14, and 16 to 19, a rational trier of fact could reasonably infer Frazier knowingly attempted to conceal income from drug distribution by purchasing postal money orders under fictitious names and addresses, directing these money orders to FF Autos or Head of Game, and then depositing the money orders into the corresponding business account.  *See Tarkoff*, 242 F.3d at 994; 18 U.S.C. § 1956(a)(1)(B)(i).

Moreover, a jury could have reasonably inferred the cash deposits into the Frazier Investment account in Count 13 and the Head of Game account in Count 20 involved the proceeds of drug trafficking since these large cash deposits occurred on the same dates Frazier deposited fraudulent postal money orders into the same accounts.  Based on the totality of the circumstances, a rational jury could have found beyond a reasonable doubt that the Count 15 and Counts 21 to 23 cash deposits stemmed from drug activity since they involved large amounts of cash, were made into the same business bank accounts as the fraudulent postal money orders, and were deposited within days or weeks of other fraudulent deposits.  Indeed, the Counts 21 to 23 cash deposits occurred simultaneously with the structuring activity charge in Count 27.

Relatedly, a rational trier of fact could have found Frazier guilty beyond a reasonable doubt on the Counts 24 to 27 structuring charges based on Postal Inspector Verhine's testimony no currency transaction reports (CTRs) were prepared in connection with the cash deposits and postal money orders listed under Counts 24

to 27, even though all these transactions exceeded the relevant reporting threshold. *See Bird*, 79 F.4th at 1349. Specifically, as to Count 24, a rational jury could have inferred Frazier intentionally evaded his bank's $10,000 CTR threshold by converting $21,100 in cash into 23 postal money orders from various post offices and then depositing these money orders into the Frazier Investment account. *See id.* As to Counts 25 and 26, a rational jury could have inferred Frazier intentionally evaded the $3,000 money order reporting requirement by purchasing $4,000 in money orders from two different post offices in the same day. As to Count 27, a rational jury could have inferred Frazier intentionally evaded the $10,000 CTR requirement by dividing $14,500 into postal money order deposits and cash deposits. *See id.*

Frazier contends Verhine acknowledged there were "occasions" where Frazier made deposits into the Frazier Investment account that exceeded $10,000. But the example Frazier cites—a September 2017 deposit into the Frazier Investment account for $18,852—still evaded the $10,000 CTR threshold since it was divided between a $7,567 cash deposit and a $11,285 check deposit. Regardless, viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in favor of the jury's verdict, Frazier's failure to avoid reporting requirements on some occasions, his payment of some legitimate car expenses, and Verhine's confusion about the reporting requirements would not preclude a reasonable jury from finding beyond a reasonable doubt that Frazier understood the reporting requirements and intentionally evaded them in Counts 24 to 27.

B. *Wire Fraud (Counts 28-29)*

It is illegal for any person who, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice," and to conspire to do the same. 18 U.S.C. §§ 1343, 1349. To convict a defendant of conspiracy to commit wire fraud, the government must prove (1) a conspiracy to commit wire fraud existed, (2) the defendant had knowledge of the conspiracy, and (3) the defendant knowingly and voluntarily joined the conspiracy. *United States v. Feldman*, 931 F.3d 1245, 1257 (11th Cir. 2019).

Regarding the first element, "the very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013) (alteration and quotation marks omitted). "[A] defendant can be convicted of conspiracy if the evidence demonstrates that he was aware of the conspiracy's essential nature, even if he did not know all of its details, played only a minor role in the overall scheme, did not have direct contact with other alleged co-conspirators, or did not participate in every stage of the conspiracy." *United States v. Sosa*, 777 F.3d 1279, 1290 (11th Cir. 2015). Regarding the joining element, "the government can meet

this burden through proof of surrounding circumstances such as acts committed by the defendant which furthered the purpose of the conspiracy." *Vernon*, 723 F.3d at 1274 (quotation marks omitted).

As for Count 28, Frazier asserts there was insufficient evidence for the jury to conclude he joined any unlawful scheme to defraud Q.W. since there was no evidence he made misrepresentations to Q.W. or that Frazier and his codefendants had a meeting of the minds. But Frazier did not need to make misrepresentations to Q.W. to participate in a conspiracy to defraud Q.W. *See Sosa*, 777 F.3d at 1290 ("A defendant can be convicted of conspiracy . . . even if he . . . played only a minor role in the overall scheme . . . or did not participate in every stage."). The jury could have reasonably inferred Frazier's knowing and voluntary participation in a conspiracy to defraud Q.W. based on circumstantial evidence. *See Vernon*, 723 F.3d at 1273-74. The trial evidence, viewed in the light most favorable to the Government, established Q.W. wired $500,000 to the Head of Game account based on an agreement the money would be used to grow the company, Frazier transferred $214,825 of those funds to the Mom & Son's Towing account—which Spencer's mother opened a day before the transfer—a day after receiving the transfer, Q.W.'s money in the Mom & Son's Towing account was used for personal expenses, Spencer lied to investigators in telling them Frazier had transferred the money so Spencer and a friend could establish a nightclub, and Frazier used Q.W.'s money to pay off personal credit card debt and to flip houses. This circumstantial evidence was more than sufficient for

a jury to find beyond a reasonable doubt Frazier knowingly and voluntarily participated in a conspiracy to commit wire fraud against Q.W. *See Feldman*, 931 F.3d at 1257, *Vernon*, 723 F.3d at 1273-74.

Furthermore, even assuming Spencer spent at least some of Q.W.'s funds in ways that indirectly benefited Head of Game—including through promotional videos for Q.W. and merchandise designs—this would not have precluded a rational jury from inferring Frazier and Spencer knowingly and voluntarily participated in a conspiracy to defraud Q.W. based on a totality of the circumstances, including, e.g., Frazier's and Spencer's use of other portions of Q.W.'s funds to pay off personal expenses and flip houses. Thus, we reject Frazier's challenge to his conviction under Count 28 as well as his challenge to his conviction under Count 29, which he rests on the success of his challenge to Count 28.

## C.  Filing a False Tax Return (Counts 35-37)

To convict a defendant of filing a false tax return under 26 U.S.C. § 7206(1), the government must prove (1) the defendant made and subscribed a tax return containing a written declaration that it was made under penalty of perjury, (2) the defendant did not believe the return to be true and correct as to every material matter, and (3) the defendant acted in a willful, rather than a negligent manner. *United States v. Margarita Garcia*, 906 F.3d 1255, 1279 (11th Cir. 2018); 26 U.S.C. § 7206(1). "[A] good-faith mistake or belief is a complete defense to the crime of filing a false tax return." *United States v. Morris*, 20 F.3d 1111, 1116 (11th Cir. 1994).

The Government also presented sufficient evidence by which a rational jury could conclude beyond a reasonable doubt that, under Counts 35 to 37, Frazier willfully filed his 2017, 2018, and 2019 tax returns under penalty of perjury while knowing they contained false information. *See Margarita Garcia*, 906 F.3d at 1279; 26 U.S.C. § 7206(1). Agent Rolanda Rooney testified that, even after giving Frazier the benefit of the doubt regarding potential errors on his tax returns and giving him additional deductions he did not report, he still had approximately $176,000 in unreported income for 2017, $100,413 for 2018, and $527,887 for 2019. While Frazier argues he had a good faith defense based on his reliance on his accountant, a rational trier of fact was free to reject this defense based on Special Agent Lisa Fontanette's testimony that (1) Frazier did not provide any documentation of the postal money orders or of Q.W.'s $500,000 transfer to the Head of Game account to his accountant, and (2) this would have made it difficult or impossible for the accountant to accurately file Frazier's taxes.

The district court did not err in denying Frazier's motion for a judgment of acquittal on all counts. We affirm his convictions.

## IV. SENTENCE

Finally, Frazier contends the district court imposed an unreasonable sentence because, absent disputed sentencing enhancements, his sentence would constitute an unreasonable upward variance. A district court's error in applying the Sentencing Guidelines is not grounds for a remand where the error was harmless, meaning "the error did not affect the district court's selection of the

sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992). For example, if a district court explicitly states on the record it would have imposed the same sentence regardless of its Guidelines calculations, we need not resolve sentencing challenges based on those calculations so long as the sentence, absent the alleged error, would still be reasonable under the 18 U.S.C. § 3553(a) factors. *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). Thus, before vacating a sentence, we must find (1) an error (2) that was not harmless. *See, e.g.*, *United States v. Martikainen*, 640 F.3d 1191, 1194 (11th Cir. 2011).

Frazier has failed to explain why the district court made an error in imposing his sentence. Frazier argues the court's *Keene* statement does not preclude review of his sentence because, *if* the six-level enhancement under U.S.S.G. § 2S1.1(b)(1) and the two-level sophisticated laundering enhancement under § 2S1.1(b)(3) were removed, then his sentence would be substantively unreasonable. Even assuming Frazier is correct, his argument offers no basis for vacating his sentence absent a showing the district court did, in fact, err in imposing these enhancements. *See, e.g., Martikainen*, 640 F.3d at 1194. Frazier abandons any argument the district court erred by merely assuming the enhancements were erroneous without offering any supporting argument or authority.

Frazier argues that, under *Keene*, this Court assumes the alleged Guidelines error. While Frazier is correct, this argument is unavailing. Under *Keene*, we need not consider a defendant's claims the court erred in calculating his Guidelines range if the purported

error is rendered harmless by the court's statement it would have imposed the same sentence regardless of the Guidelines issue. *See Keene*, 470 F.3d at 1349. This Court need not perform the *Keene* analysis to determine whether the district court's purported error was harmless where Frazier has not attempted to show any error to begin with. *See, e.g., Martikainen*, 640 F.3d at 1194. Lastly, while Frazier could have independently argued his sentence was substantively unreasonable even with the sentencing enhancements—which would require us to consider the substantive reasonableness of his sentence notwithstanding the district court's *Keene* statement—he has not done so, and instead merely argues his sentence would be substantively unreasonable absent the enhancements. For these reasons, we affirm Frazier's sentence.

## V. CONCLUSION

The district court did not abuse its discretion in denying Frazier's motion to sever Counts 28 to 29 or in denying Frazier's motions in limine. It also did not err in denying Frazier's motion for a judgment of acquittal on all counts. Finally, Frazier failed to show any error in his sentence. We affirm Frazier's convictions and sentence.

**AFFIRMED.**