[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10619

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

REGINALD ANDERSON,
a.k.a. Red,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:19-cr-00183-RSB-CLR-1

_____

Before LAGOA, BRASHER, and WILSON, Circuit Judges.

PER CURIAM:

Reginald Anderson was convicted of three counts of distribution of methamphetamine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(C), after selling it three times to confidential informants working for the Drug Enforcement Administration.

The conduct and evidence underlying Anderson's convictions are straightforward, so we do not recite in detail the factual or procedural background of this case. Instead, relevant here, a grand jury indicted Anderson on three counts of drug distribution based on three drug transactions—one per count—that he made with the confidential informants. The first two transactions took place the morning and afternoon of June 5, 2018. The third occurred on June 12, 2018. A jury convicted Anderson of all three counts after seeing exhibits collected from each transaction, that DEA chemists confirmed were methamphetamine; after hearing the confidential informants testify about each transaction; and after seeing audio-video recordings and transcripts of the last two transactions.

On appeal, Anderson does not challenge any of the evidence above. Instead, he first challenges the district court's decision to permit a DEA agent to testify as an expert and offer testimony that he argues was improper on several grounds. Second, he challenges the district court's denial of his motion for mistrial after

government witnesses implied that he was involved in prior drug transactions outside this case. Third, he argues that his convictions should be reversed because the government committed prosecutorial misconduct during its closing argument and the district court failed to take curative action after that misconduct. Fourth, he argues that these errors cumulatively warrant a reversal of his convictions. For the reasons below, each challenge fails, and we affirm.

## I.

We begin with Anderson's challenges to a DEA agent's testimony. At trial, the government called Robert Livingston, a DEA agent who worked with the confidential informants to set up the transactions underlying Anderson's drug distribution convictions. On appeal, Anderson contends that the district court should not have permitted Livingston to (1) testify as an expert and (2) provide testimony that Anderson alleges is hearsay, improper identification testimony, and testimony violating the Confrontation Clause.

Three standards of review apply. First, we review a district court's "evidentiary rulings on the admission of expert witness testimony for abuse of discretion." *United States v. Jayyousi*, 657 F.3d 1085, 1106 (11th Cir. 2011) (cleaned up). Similarly, we review "a district court's decisions regarding the admissibility of evidence and testimony for abuse of discretion." *United States v. Hawkins*, 934 F.3d 1251, 1264 (11th Cir. 2019). A district court has considerable leeway in its evidentiary rulings, *see United States v. Barton*, 909 F.3d 1323, 1330 (11th Cir. 2018), and abuses its discretion when it "applies an incorrect legal standard or makes findings of fact that are

clearly erroneous." *United States v. Azmat*, 805 F.3d 1018, 1041 (11th Cir. 2015) (cleaned up). Importantly, an abuse of discretion will not warrant reversal "unless the objecting party has shown a substantial prejudicial effect from the ruling." *Barton*, 909 F.3d at 1330–31 (cleaned up). "Substantial prejudice goes to the outcome of the trial," and "where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." *Id.* at 1331 (cleaned up).

Second, if a defendant fails to preserve an issue below, we review the issue for plain error. *See Hawkins*, 934 F.3d at 1264. "To establish plain error, a defendant must show (1) error; (2) that is plain; (3) that affects his substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lewis*, 40 F.4th 1229, 1246 (11th Cir. 2022). To establish that an error affected his substantial rights—the third prong of the plain error test—a defendant must establish "a reasonable probability that, but for the error, a different outcome would have occurred." *United States v. Margarita Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018).

Third, we review *de novo* whether testimony violates the Confrontation Clause. *United States v. Kent*, 93 F.4th 1213, 1217 (11th Cir. 2024). With these three standards in mind, we address—and reject—Anderson's arguments on Livingston's testimony.

*A.*

We first address Anderson's argument that the court should not have permitted Livingston to testify as an expert. At trial, the

government sought to qualify Livingston as an expert in "drug trafficking and distribution." Anderson objected that Livingston would be unable to provide information not already "within the ken of the jury." The district court overruled the objection and permitted Livingston to testify as an expert. In so doing, the court did not abuse its discretion.

"Federal Rule of Evidence 702 permits expert testimony if specialized knowledge will help the jury to understand the evidence or to determine a fact in issue." *United States v. Garcia*, 447 F.3d 1327, 1334 (11th Cir. 2006) (cleaned up). And a witness can be qualified as an expert, based on his knowledge, skill, experience, training, or education. *See id.* at 1335.

Here, Livingston was qualified to testify as an expert in drug trafficking and distribution, and his testimony was helpful to the jury. Livingston had extensive experience, training, and knowledge in drug operations: he was a DEA agent for over 20 years, received training in drug code and surveillance methods, and conducted dozens if not hundreds of narcotics investigations. *See id.* at 1332, 1335 (district court did not abuse its discretion in permitting a witness to testify as an expert in drug distribution when the witness was a DEA agent for several years, received training on the operation of drug organizations, and was involved in at least 50 drug investigations). And Livingston's testimony—which covered controlled purchases and the meanings of code terms used in drug trades—helped the jury understand the drug distribution evidence underlying Anderson's convictions. *See Hawkins*, 934 F.3d at 1261

(we have "repeatedly" held that "narcotics agents may testify as experts to help juries understand the drug business, codes, and jargon"); *Garcia*, 447 F.3d at 1334 (the "operations of narcotics dealers are a proper subject for expert testimony under Rule 702" (cleaned up)).

Anderson argues that Livingston's testimony was unhelpful to the jury because "any reasonable juror would have understood" the terms that Livingston interpreted—terms Anderson suggests are "ordinary English." *See Hawkins*, 934 F.3d at 1256, 1264–65 (it was improper for a DEA agent "to 'interpret' uncoded, ordinary language"). But Livingston interpreted drug code—*e.g.*, he testified that "sevens" meant seven grams of a drug, "whole" meant a whole ounce of a drug, and "fronted" meant dealing a quantity of drugs to a customer who would pay later. And we have "affirmed the admission of expert testimony by law enforcement officers interpreting drug codes and jargon," *United States v. Holt*, 777 F.3d 1234, 1265 (11th Cir. 2015), including words similar to the ones here, *see, e.g.*, *id.* at 1252, 1265 (district court did not err in allowing agent to provide expert testimony on drug code, including that "'228' referred to 228 grams").

Citing our decision in *Hawkins*, Anderson also argues that the district court abused its discretion by permitting Livingston's "indiscriminate merging of fact testimony with expert testimony." 934 F.3d at 1266. Anderson contends that Livingston testified as an expert even on factual matters on which he lacked special expertise, thus conferring an unwarranted "aura of special reliability" around

Livingston's factual testimony. This fact-expert merging substantially prejudiced him, he argues, because his defense "relied exclusively" on challenging the credibility of prosecution witnesses, and Livingston bolstered their credibility by testifying as an expert on "every critical fact."

But even assuming without deciding that Anderson preserved this challenge and that the district court erred, Anderson has failed to demonstrate that any error caused him substantial prejudice. *See Barton*, 909 F.3d at 1330–31. The evidence of Anderson's guilt—even if not bolstered by Livingston's status as an expert—was overwhelming. First, substances collected from all three of Anderson's transactions were published to the jury as Exhibits 1, 5, and 12, and DEA chemists testified that these substances were methamphetamine. Second, the two confidential informants—D.W. and E.M.—both testified on how all three transactions took place. Third, the jury heard audio-video recordings and read transcript excerpts of the last two transactions, all of which were published to the jury during E.M.'s testimony. So, even if the district court erred by permitting Anderson to mix fact and expert testimony without enough demarcation, that error lacks the prejudice to warrant reversal. *See Barton*, 909 F.3d at 1331 ("where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted" (cleaned up)).

*B.*

Next, Anderson argues that Livingston's testimony violated rules against hearsay and improper identification and violated the Confrontation Clause. Specifically, Anderson challenges Livingston's testimony: (1) on D.W.'s history with drugs; (2) on D.W.'s relationship with E.M.; (3) on information that E.M. shared with Livingston about Anderson; (4) on Anderson's three transactions underlying his charges; (5) on conversations that E.M. had with Anderson when a particular photograph of them was taken; (6) identifying Anderson as the man in photographs shown to the jury at trial; (7) on Anderson's giving of his phone number to E.M. during the first transaction; and (8) that two exhibits published to the jury—Exhibits 1 and 5—were methamphetamine. Anderson contends that this testimony was hearsay, improper identification testimony, testimony violating the Confrontation Clause, or some combination of these categories.

But again, Anderson's contentions fail because no error caused him substantial prejudice. *See Barton*, 909 F.3d at 1330–31. First, Anderson has failed to explain how D.W.'s history with drugs or his relationship with E.M. even contributed to the jury's verdict on *Anderson*'s conduct. Second, even had the jury not heard Livingston's testimony on the eight matters above, it would have learned about most of them through D.W.'s or E.M.'s testimony. They testified about D.W.'s drug history, his relationship with E.M., information or material related to Anderson that E.M. shared with Livingston, and that Anderson had given E.M. his number and she

then shared it with Livingston. Likewise, DEA chemists testified that the exhibits were methamphetamine, and there were audio-video recordings of two of the drug transactions. Third, as explained above, the unchallenged testimony from the DEA chemists, D.W., and E.M., as well as the audio-video recordings and transcripts published to the jury, overwhelmingly supported Anderson's convictions. *See Barton*, 909 F.3d at 1331.

Finally, we reject Anderson's contention that the court violated his rights under the Confrontation Clause by permitting Livingston to testify on the matters above. "[T]he Sixth Amendment does not prohibit the admission of an out-of-court statement when the declarant testifies at trial to the same statement." *Garcia*, 447 F.3d at 1329. Here, even assuming that Livingston was recounting information he learned from others—specifically, as Anderson's appellate brief mentions, "[D.W., E.M.], and the [DEA] chemists"—those "declarants" testified at trial on most of the above matters and were all subject to cross-examination. And, partly because of their testimony, the evidence against Anderson was overwhelming even apart from Livingston's challenged testimony.

## II.

We next address the district court's denial of Anderson's motion for mistrial after three government witnesses indicated that he had been involved in other transactions.

At trial, Livingston, D.W., and E.M. all indicated that Anderson had engaged in prior drug transactions not at issue in this case. After Livingston mentioned that D.W. had engaged in a

transaction with "another informant," Anderson objected; the court then struck Livingston's testimony and instructed the jury to not consider testimony "regarding any other transactions other than the three that are at issue in this case." Later, D.W. testified that he "had another transaction" with Anderson "in another case"; Anderson then moved for a mistrial. The court denied that motion, but struck that piece of D.W.'s testimony and gave a curative instruction directing the jury to not consider it but instead to consider only the "testimony about the transactions that are alleged in this case." At the end of D.W.'s testimony, the court instructed the jury again to "[d]isregard any testimony about any other alleged interactions" "outside of the three alleged interactions charged in this case." Next, E.M. mentioned that Anderson had "given [methamphetamine] to [her] before." And the government, when questioning her, suggested that she would be familiar with drug slang "based on [her] former dealings with [Anderson]." Anderson did not object below to these parts of E.M.'s testimony.

On appeal, Anderson argues that the district court should have granted his motion for mistrial because the government failed to give notice before Livingston, D.W., and E.M. testified on the prior transactions. *See* Fed. R. Evid. 404(b).

We ordinarily review a district court's decision not to grant a mistrial for abuse of discretion, *see United States v. Emmanuel*, 565 F.3d 1324, 1334 (11th Cir. 2009), but review only for plain error issues not preserved below, *see Hawkins*, 934 F.3d at 1264.

"A defendant is entitled to a mistrial only if he shows substantial prejudice, meaning that it is reasonably probable that, but for the alleged error, the outcome of the trial would have been different." *United States v. Gallardo*, 977 F.3d 1126, 1138 (11th Cir. 2020). "We make this determination in the context of the entire trial and in light of any curative instruction." *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007). "When the district court gives a curative instruction, we presume that the jury followed it." *Gallardo*, 977 F.3d at 1138. If the district court issued a curative instruction, we reverse only "if the evidence is so highly prejudicial as to be incurable." *United States v. Melgen*, 967 F.3d 1250, 1262 (11th Cir. 2020) (cleaned up). And, "when the record contains sufficient independent evidence of guilt, any error was harmless." *Newsome*, 475 F.3d at 1227.

Here, Anderson has failed to establish the substantial prejudice needed for a mistrial. *See Gallardo*, 977 F.3d at 1138. Livingston and D.W. did not discuss in detail the other transactions, and immediately after they referenced those transactions, the district court struck their comments and instructed the jury to consider only the drug transactions at issue in this case. After D.W. left the stand, the court gave another curative instruction to the same effect. We presume the jury followed the court's curative instructions and disregarded the stricken testimony. *See id.*; *United States v. Oscar*, 877 F.3d 1270, 1283–84 (11th Cir. 2017) (district court's strong curative instructions cured any alleged prejudice after the prosecution implied that a defendant had been involved in a death separate from his charged offenses). And, other unchallenged

evidence—which, again, included testimony from D.W. and E.M. describing the transactions at issue, testimony from DEA chemists identifying methamphetamine collected from those transactions, and audio-video recordings of the last two transactions—was "sufficient independent evidence" of Anderson's guilt. *Newsome*, 475 F.3d at 1227.

Anderson compares this case to *United States v. Harriston*, where we vacated a defendant's conspiracy convictions because the government introduced evidence of a prior unrelated murder conviction. *See* 329 F.3d 779, 786–89 (11th Cir. 2003). But *Harriston* is distinguishable. There, the evidence of the defendant's guilt was not overwhelming, the government asked questions that exposed a prior guilty plea to murder, and we reversed the court's partial denial of a mistrial in part because of the "seriousness" of the prior murder conviction. *See id.* Here, the evidence was overwhelming, and Livingston and D.W. referred to a prior transaction that lacks the same prejudice as does a prior murder.

As to the parts of E.M.'s testimony suggesting prior drug transactions, Anderson did not preserve the issue below, so we review his challenge on plain error. *See Hawkins*, 934 F.3d at 1264. Even if we assume that the district court plainly erred in permitting E.M. (and the government, in its questions) to indicate that Anderson had engaged in drug transactions not at issue in this case, Anderson's challenge fails. Again, plain error requires that Anderson demonstrate a "reasonable probability that, but for the error, a different outcome would have occurred." *See Garcia*, 906 F.3d at 1267.

Given the overwhelming evidence of Anderson's guilt, as explained above, it is not reasonably probable that the trial outcome would have differed even if the jury had not heard E.M.'s or the government's passing references to prior transactions.

## III.

Next, Anderson argues that his convictions should be reversed because the government committed prosecutorial misconduct when presenting its closing argument and the district court failed to "take any curative action" after that misconduct. In his view, the government committed prosecutorial misconduct when it suggested that he was to blame for damage done by drug distributors to the community and that the jurors were victims of Anderson's conduct and responsible for the health of their community. *See generally United States v. Beasley*, 2 F.3d 1551, 1559–60 (prosecution's closing argument comments that referred to the "war on drugs," that appealed to "the conscience of the community," and that were "calculated to inflame," were improper (cleaned up)).

We generally review *de novo* a claim of prosecutorial misconduct during closing arguments. *United States v. Sosa*, 777 F.3d 1279, 1294 (11th Cir. 2015). "To establish prosecutorial misconduct, (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *Id.* (cleaned up). A defendant's substantial rights are prejudicially affected when it is reasonably probable that, but for the remarks, the trial outcome would have been different. *Id.* "When the record

contains sufficient independent evidence of guilt, any error is harmless." *Id.* (cleaned up).

Here, Anderson's prosecutorial-misconduct challenge fails, because he has not established the prejudice necessary to demonstrate prosecutorial misconduct. Even if we assume that the prosecutor's comments were improper, the district court repeatedly instructed the jury that statements and arguments made by the attorneys were not evidence to be considered. *See United States v. Al Jaberi*, 97 F.4th 1310, 1328 (11th Cir. 2024) ("Because the statements of counsel are not evidence, the district court may rectify improper prosecutorial statements by instructing the jury that only the evidence in the case is to be considered." (cleaned up)). And, as explained above, the other evidence against Anderson—witness testimony, recordings of the last two transactions, and drugs collected from all three transactions—was overwhelming. *See Sosa*, 777 F.3d at 1294. Because Anderson has not established prosecutorial misconduct, we do not address his argument that the district court erred by declining to take curative action following prosecutorial misconduct. Ultimately, the government's comments at closing argument do not justify a reversal of Anderson's convictions.

## IV.

Lastly, Anderson argues that his convictions should be reversed because of the cumulative effect of his alleged errors. He contends that the trial consisted of only "one day of substantive evidence," and that in a single day the government presented

inadmissible expert testimony, prior bad act testimony, and improper closing arguments.

We review *de novo* the cumulative impact of trial errors. *United States v. Pendergrass*, 995 F.3d 858, 881 (11th Cir. 2021). "The cumulative-error doctrine calls for reversal of a conviction if, in total, the non-reversible errors result in a denial of the constitutional right to a fair trial." *Id.* "No cumulative error exists where a criminal defendant cannot establish that the combined errors affected his substantial rights," and those rights are not affected if "properly admitted evidence sufficiently established" the defendant's guilt. *Id.* (cleaned up). Here, the assumed errors, even when combined, did not affect Anderson's substantial rights given that his convictions were supported—as explained above—by overwhelming evidence unchallenged on appeal.

## V.

The district court is **AFFIRMED**.