**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10394

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DEMETRIS GERVONE BELLAMY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:23-cr-00029-HL-TQL-1

_____

Before LUCK, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Demetris Bellamy appeals his convictions and 260-month sentence for several firearm and drug-related crimes. Bellamy argues that the district court improperly admitted hearsay testimony

at his trial, abusing its discretion and violating his rights under the Confrontation Clause. He further contends that the district court erred when it included drug quantities from uncharged trafficking offenses in his guideline calculations. Because the testimony he challenges was not hearsay and the district court included drug quantities that were properly treated as part of the same course of conduct as Bellamy's offense of conviction, we affirm.

## I.

During a drug bust, police arrested Bellamy and found a gun, digital scale, three phones, and various drugs in his car. They also found a bag of methamphetamine that Bellamy had thrown as he was attempting to flee. Bellamy was charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count One), one count of possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) (Count Two), one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Three), and one count of possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four). He pleaded not guilty to all counts.

At a jury trial, the government called Lieutenant Rob Picciotti, who testified that law enforcement had set up the drug bust through a confidential informant. Bellamy objected on hearsay and Confrontation Clause grounds because the informant's statement

was out of court and the informant was not available for cross-examination. The government responded that it was using the testimony to explain why law enforcement had focused their surveillance on a particular location, and the district court overruled the objections.

Picciotti further testified that on the day of the drug bust, he was following Bellamy. Bellamy drove to a house, entered it, and emerged with a white bag. Picciotti followed Bellamy to where the informant had arranged to meet with him. Police were waiting there and activated their blue lights once Bellamy arrived. Bellamy attempted to flee and threw the white bag. Officers apprehended Bellamy while Picciotti secured Bellamy's car. In the subsequent search of the vehicle, officers found a loaded gun, cocaine, methamphetamine, and a digital scale.

A forensic scientist tested the substances recovered from Bellamy's arrest and found that the white bag Bellamy had thrown while fleeing contained 355.71593 grams of methamphetamine, and that another bag from Bellamy's car contained 10.989 grams of powder cocaine.

The jury convicted Bellamy of Counts One, Two, and Four, but it acquitted him on Count Three. For Count Two, the jury found that Bellamy possessed with intent to distribute methamphetamine weighing more than 50 grams. And for Count Four, the jury determined that Bellamy had possessed a firearm in connection with Count Two.

A probation officer prepared a presentence investigation report that summarized text messages the police had recovered from one of the phones they found in Bellamy's car. The texts discussed at least thirteen drug transactions that occurred in one year, involved at least six buyers or sellers (all of whom were using apparent pseudonyms), and involved five kinds of drugs (Xanax, cocaine, methamphetamine, marijuana, and MDMA).

Using the 2018 Guidelines Manual, the probation officer calculated the quantity of drugs for which Bellamy was accountable as 510.3 grams of methamphetamine sold to the confidential informant before the investigation, the 355.71593 grams of methamphetamine and 10.989 grams of cocaine seized after his arrest, and the drug transactions discussed by text. Because it was unclear how many of the text messages resulted in completed transactions, the probation officer stated that, at minimum, Bellamy was accountable for 1 kilogram of methamphetamine, 17.62 grams of cocaine base, 202.95 grams of cocaine, 54,300 units of Xanax, 200 units of MDMA, and 458.6 grams of marijuana. Under the Drug Conversion Table contained in section 2D1.1 of the guidelines, the probation officer calculated the total converted drug weight to be 10,269.47977 kilograms.

Applying sections 3D1.1(a) and 3D1.2 of the guidelines, the probation officer calculated Bellamy's base offense level for Count One as 14 and the base offense level for Count Two as 34. Because Count Two had a higher base offense level, it controlled the offense level for the grouped counts. Count One carried a maximum of 10

years' imprisonment, 18 U.S.C. § 924(a)(2), while Count Two carried a minimum of 10 years' imprisonment, 21 U.S.C. § 841(b)(1)(A)(viii). Count Four carried a minimum of 60 months' imprisonment. U.S.S.G. § 2K2.4(b); 18 U.S.C. § 924(c). Combined with his criminal history score of 7 and criminal history category IV, Bellamy's guideline range for Counts One and Two was 210 to 262 months, plus a consecutive term of 60 months for Count Four.

Bellamy objected to the report's inclusion of the transaction with the informant and the transactions discussed in his texts. He argued that because he had not been found guilty of those transactions and police had not recovered the drugs referenced, he should not be held accountable for those drug amounts. He also denied communicating with the informant, owning the cell phone found in his car, and completing the transactions discussed in the texts. He argued that his total offense level should be 32, which would lower his guideline range for Counts One and Two to 168 to 210 months.

At sentencing, Bellamy reiterated his objection to the drug quantities. The government called Investigator Aaron Girdler, who testified that an informant said he had purchased over 500 grams of methamphetamine from Bellamy (who was using a pseudonym). Girdler also testified that Bellamy had admitted that the three phones found in the car belonged to him. Girdler described the texts and photos pulled from one of those phones. The photos featured crack cocaine on a digital scale, Bellamy's Social Security card, and Bellamy near his car. Girdler admitted that he did not

know the real name of anyone in the texts, nor did he know if any of the transactions ever took place. He also admitted that the car Bellamy was driving was not registered to Bellamy.

The district court overruled Bellamy's objection to the drug quantities. The government recommended a sentence of 322 months' imprisonment, and Bellamy argued for a bottom-of-the-guidelines sentence. The district court adopted the guideline calculations and sentenced Bellamy to 260 months' imprisonment. This sentence included 120 months on Count One, 200 months on Count Two, and 60 months on Count Four. Counts One and Two were to run concurrently and Count Four would run consecutively. The court noted that it had varied downward on Count Two.

Bellamy timely appealed.

## II.

Bellamy raises three issues on appeal. First, he argues that the district court erroneously admitted hearsay when it allowed Picciotti to testify about a confidential informant's out-of-court statements. Second, he argues that this hearsay admission also violated his rights under the Confrontation Clause. Third, he argues that the district court erred by including uncharged drug trafficking transactions in its calculation of drug quantities for sentencing. For the following reasons, we reject all three arguments.

*A.*

First, the district court did not err when it admitted Picciotti's testimony about the confidential informant's out-of-court statements because the testimony was not hearsay. Bellamy argues that Picciotti's testimony was inadmissible hearsay because it was offered to prove the truth of the matter asserted: that Bellamy was a drug dealer who would be selling drugs at a particular location. He adds that the admission of this statement was not harmless. We disagree with Bellamy's first argument, so we do not reach the question of harmlessness.

We review evidentiary rulings for abuse of discretion. *United States v. Carter*, 158 F.4th 1319, 1327 (11th Cir. 2025). The district court did not abuse its discretion in admitting Picciotti's testimony about the confidential informant's statement because the testimony was not hearsay. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." *United States v. Holley*, 166 F.4th 139, 148 (11th Cir. 2026) (quoting Fed. R. Evid. 801(c)). An out-of-court statement may be admissible as non-hearsay if the statement (1) is offered for a purpose other than to prove the truth of the matter asserted, (2) this non-hearsay purpose is relevant, and (3) the probative value of the statement is not substantially outweighed by the risk of unfair prejudice. *United States v. Kent*, 93 F.4th 1213, 1218 (11th Cir. 2024).

Picciotti's testimony about the confidential informant's statement was admissible as non-hearsay because it satisfied these three elements. First, the government offered Picciotti's testimony

not to prove the truth of the informant's statement, but to explain why police had focused their surveillance on a particular location. Proving that the statement had an effect on its listeners is distinct from proving that the statement itself was true. Second, Picciotti's testimony was relevant because it provided background information about how the government set up the drug bust. Third, Bellamy does not argue that the probative value of these statements is substantially outweighed by the risk of unfair prejudice.

Because Picciotti's testimony about the confidential informant's statement was admissible as non-hearsay, we reject Bellamy's first ground for appeal.

*B.*

Second, Picciotti's testimony did not violate the Confrontation Clause because it was non-hearsay. Bellamy argues that Picciotti's testimony about the informant's statement violated the Confrontation Clause because the statement was testimonial. He explains that it was testimonial because it was given to law enforcement and served as a substitute for trial testimony. He adds that its admission was not harmless beyond a reasonable doubt. The government responds that any error in admitting this testimony was harmless beyond a reasonable doubt. Bellamy replies that the government's response conceded that Picciotti's testimony was hearsay and that it violated the Confrontation Clause.

We review *de novo* whether a statement implicates the Sixth Amendment's Confrontation Clause. *Carter*, 158 F.4th at 1327. The Confrontation Clause bars the introduction of an out-of-court

statement by an absent witness when that statement is "testimonial." *Crawford v. Washington*, 541 U.S. 36, 51, 53–54 (2004). But to implicate the Confrontation Clause, a testimonial statement must also be hearsay. *Kent*, 93 F.4th at 1218 (citing *United States v. Jiminez*, 564 F.3d 1280, 1286 (11th Cir. 2009)).

Picciotti's testimony about the confidential informant was not hearsay, so it did not implicate the Confrontation Clause. We thus reject Bellamy's second ground for appeal.

## C.

Third, the district court did not clearly err when it included drug quantities from the uncharged offenses in Bellamy's texts because the government proved by a preponderance of the evidence that these offenses were relevant conduct.

Bellamy argues that the district court erred in its drug quantity calculation because it included drug transactions from his texts that were not part of the same course of conduct as his conviction. He relies on guideline commentary and our precedents interpreting this commentary to contend that offenses involving different kinds of drugs cannot be the same course of conduct. He adds that there is no evidence that he completed these transactions. The government disagrees, arguing that the other transactions were drug trafficking offenses like Bellamy's offense of conviction. The government adds that we need not rely on guideline commentary because section 1B1.3(a)(2) unambiguously includes attempted crimes. Bellamy replies that the plain language of the guidelines does not include attempted crimes.

We review for clear error a district court's determination of drug quantity and its determination that an act is relevant conduct under section 1B1.3 of the guidelines. *United States v. Ifediba*, 46 F.4th 1225, 1237 (11th Cir. 2022); *United States v. Gyetvay*, 149 F.4th 1213, 1239 (11th Cir. 2025). "We will not find clear error unless we are left with the definite and firm conviction that a mistake has been made." *Gyetvay*, 149 F.4th at 1242 (citing *United States v. White*, 335 F.3d 1314, 1319 (11th Cir. 2003)).

"When calculating a defendant's sentencing range under the Guidelines, the sentencing court must consider all 'relevant conduct' as defined in § 1B1.3." *United States v. Siegelman*, 786 F.3d 1322, 1332 (11th Cir. 2015). A district court may consider evidence from trial and presented at sentencing to make factual findings for sentencing purposes. *United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004). We have explained that "relevant conduct is broadly defined to include both uncharged and acquitted conduct that is proven at sentencing by a preponderance of the evidence." *Siegelman*, 786 F.3d at 1332. Under section 1B1.3 of the guidelines, relevant conduct must have been "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A), (a)(2). The "same course of conduct" criteria applies solely to offenses for which section 3D1.2(d) would require grouping of counts. U.S.S.G. § 1B1.3(a)(2). Included in section 3D1.2's list of offenses that require grouping is section 2D1.1, which covers attempted and completed drug trafficking offenses. U.S.S.G. § 3D1.2.

We cannot say that the district court clearly erred when it included drug quantities from uncharged offenses in Bellamy's guideline calculations. The government proved by a preponderance of the evidence that the transactions in Bellamy's texts were similar enough to his offense of conviction to constitute relevant conduct. We have upheld sentences in which a district court calculated drug quantities from extrinsic transactions even when those transactions involved drugs that were not part of the defendant's offense. *See United States v. Rodgers*, 951 F.2d 1220, 1223 (11th Cir. 1992), *withdrawn in part, amended by* 972 F.2d 1253 (11th Cir. 1992) (including cocaine in drug calculation even though the defendant's instant offense was based on marijuana). What is relevant is the "similarity, regularity, and temporal proximity" of the extrinsic offenses and the charged offense. *United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994). The government presented texts discussing at least thirteen transactions that occurred within one year, involved six buyers or sellers (all of whom were using apparent pseudonyms), and involved five kinds of drugs. The fact that Bellamy was attempting to transact in the same five kinds of drugs establishes that these transactions were similar; the frequency of these transactions establishes that they were regular; and the fact that they occurred within one year establishes temporal proximity. *See id.* The district court thus did not clearly err in concluding that these offenses were relevant conduct.

Bellamy's argument that attempted offenses cannot be relevant conduct is incorrect. Relevant conduct includes offenses that require grouping under section 3D1.2(d) of the guidelines. U.S.S.G.

§ 1B1.3(a)(2). Offenses that require grouping under section 3D1.2(d) include attempted drug crimes. U.S.S.G. § 2D1.1. The government did not need to prove that Bellamy completed these transactions, but merely that his conduct was the kind "for which § 3D1.2(d) would require grouping." U.S.S.G. § 1B1.3(a)(2). It did so by a preponderance of the evidence. *See Siegelman*, 786 F.3d at 1332.

Given the evidence presented at trial and sentencing, the district court did not clearly err in determining that Bellamy's texts about drug transactions were relevant conduct or in calculating the relevant drug quantities.

### III.

For the foregoing reasons, Bellamy's convictions and sentence are **AFFIRMED.**